UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No.: 12-83490-JAC11 |
| ADEPT Technologies, LLC, ) | |
| ) | Chapter 11 |
| Debtor. ) | |

## SIXTH INTERIM ORDER
## AUTHORIZING USE OF CASH COLLATERAL

This matter came before the Court on ADEPT Technologies, LLC's (the "Debtor") *Third Motion for Use of Cash Collateral* filed September 18, 2013 (the "Third Cash Collateral Motion"; Doc. 63), seeking the entry of an interim order authorizing the use by the Debtor of cash collateral, all of which cash collateral is presently subject to a security interest in favor of PNC Bank, National Association ("PNC"). The Debtor and PNC previously entered into that certain Agreed Interim Order Authorizing Use of Cash Collateral, dated November 13, 2012 (the "First Interim Cash Collateral Order"; Doc. 27), which expired by its terms on or about December 28, 2012, that certain Second Agreed Interim Order Authorizing Use of Cash Collateral, dated January 16, 2012 (the "Second Interim Cash Collateral Order"; Doc. 53), that certain Third Interim Order Authorizing Use of Cash Collateral, dated March 7, 2013 (the "Third Interim Cash Collateral Order"; Doc. 79), that certain Fourth Interim Order Authorizing Use of Cash Collateral, entered May 22, 2013 (the "Fourth Interim Cash Collateral Order," Doc. 113), and that certain Fifth Interim Order Authorizing Use of Cash Collateral, entered July 30, 2013 (the "Fifth Interim Cash Collateral Order," Doc. 146). Due notice of the hearing on the Third Cash Collateral Motion was given by the Debtor to (i) the Bankruptcy Administrator; (ii) the Debtor's principal pre-petition secured creditor, PNC; (iii) the Debtor's 20 largest unsecured creditors; and (iv) those parties requesting notice. Notice of the Third

Cash Collateral Motion has been given and has been served in accordance with § 102(1) of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure, which notice is appropriate in the particular circumstances and is sufficient for all purposes under the Bankruptcy Code and the applicable Bankruptcy Rules in respect to the relief requested in the Second Cash Collateral Motion.

The Court has considered the Third Cash Collateral Motion and, based upon the materials presented, all pleadings in the Court file, the arguments of counsel for the Debtor and PNC, and there being no objections to the Third Cash Collateral Motion from any other party, after due deliberation, and good and sufficient cause appearing therefore, the Court hereby FINDS as follows:

A. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are sections 105 and 363 of the Bankruptcy Code (defined herein) and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Venue of this Chapter 11 case is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This Order shall constitute findings of fact and conclusions of law pursuant to Rule 7052 of the Bankruptcy Rules and be valid, binding on all parties in interest and fully effective *nunc pro tunc* to the Petition Date (defined herein) immediately upon entry by the Court. Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062 or 9014 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

B. On October 31, 2012 (the "Petition Date"), the Debtor filed the above-referenced bankruptcy case (the "Bankruptcy") seeking relief under Chapter 11 of Title of 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

C. As of the Petition Date, the Debtor had certain lines of credit and other obligations with PNC, including without limitation, the following: (i) a $1,200,000.00 line of credit evidenced by that certain Change in Terms Agreement dated April 6, 2010 (the "$1.2 Million Line of Credit"); (ii) a $500,000.00 term loan evidenced by that certain Promissory Note dated November 18, 2010 (the "$500,000 Term Loan"); (iii) a $251,000.00 term loan evidenced by that certain Universal Note and Security Agreement dated December 15, 2005, as amended from time to time (the "$251,500 Term Loan"); (iv) a $3,100,000 term loan evidenced by that certain Amended and Restated Promissory Note B dated December 19, 2008, as amended from time to time (the "$3.1 Million Term Loan"); (v) a $780,000.00 term loan evidenced by that certain Promissory Note dated July 1, 2008, as amended from time to time (the "$780,000 Term Loan"); and (vi) certain equipment leases pursuant to that certain Master Lease Agreement dated March 2, 2010 (the "Equipment Lease," collectively with the $1.2 Million Line of Credit, the $500,000 Term Loan, the $251,500 Term Loan, the $3.1 Million Term Loan and the $780,000 Term Loan, the "PNC Debt").

D. The PNC Debt is secured by, among other things, (i) certain real property located at 527 Plummer Road, Huntsville, Madison County, Alabama (the "Plummer Road Property"), (ii) certain real property located at Lot 5, Block 1 Jetplex Industrial Park in Madison County, Alabama (the "Jetplex Property"), (iii) certain real property located at Research Park Boulevard in Madison County, Alabama (the "Research Park Blvd Property," together with the Plummer Road Property and Jetplex Property, the "Real Property Collateral"); and (iv) PNC's security interest in the following items of collateral whether now owned or hereafter acquired by the Debtor: all of the Debtor's inventory, chattel paper, accounts, equipment and general intangibles, together with all other accessories, accessions, attachments, tools, parts, supplies, replacements of and additions thereto, all products and produce thereof and all proceeds of the foregoing, including insurance

proceeds (the "Personal Property Collateral," sometimes hereinafter collectively referred to with the Real Property Collateral as the "PNC Collateral").

E. In addition to the cash and cash-equivalent portions of the Personal Property Collateral that existed as of the Petition Date, "Cash Collateral," as defined by § 363(a) of the Bankruptcy Code, also includes post-Petition Date proceeds, products, offspring, rents, or profits of the Personal Property Collateral as provided by § 552(b) of the Bankruptcy Code and as the term "proceeds" is defined in § 9A-102(64) of the Uniform Commercial Code, as enacted in the state of Alabama.

F. Debtor and PNC agree, and a prima facie showing has been made, that PNC held on the Petition Date, and continues to hold, a properly-perfected first priority security interest in the PNC Collateral, including the Cash Collateral.

G. PNC asserts that the aggregate of the PNC Debt totaled approximately $6,402,852 as of the Petition Date. In addition to the PNC Debt, the Debtor is liable for all accrued but unpaid interest and costs of collection incurred by PNC in connection with the PNC Debt, including without limitation, reasonable attorneys' fees and expenses (collectively, with the PNC Debt, the "Indebtedness").

H. On November 13, 2012, this Court entered the First Interim Cash Collateral Order, which agreed order authorized Debtor to use Cash Collateral in the ordinary course of its business, subject to the terms and conditions of such order, for a period of forty-five (45) days, which period expired on December 28, 2012. On January 16, 2013, this Court entered the Second Interim Cash Collateral Order, which agreed order authorized Debtor to use Cash Collateral in the ordinary course of its business, subject to the terms and conditions of such order, for a period of forty-five (45) days, which period expires on March 2, 2013. On March 7, 2013, this Court entered the Third Interim

Cash Collateral Order, which order authorized Debtor to use Cash Collateral in the ordinary course of its business, subject to the terms and conditions of such order, for a period of sixty (60) days, which expired on May 6, 2013. On May 22, 2013, this Court entered the Fourth Interim Cash Collateral Order, which order authorized Debtor to use Cash Collateral in the ordinary course of its business, subject to the terms and conditions of such order, for a period of sixty (60) days, which expired on July 22, 2013. On July 30, 2013, this Court entered the Fifth Interim Cash Collateral Order, which order authorized Debtor to use Cash Collateral in the ordinary course of its business, subject to the terms and conditions of such order, for a period of forty-five (45) days, which expired on September 13, 2013.

I. Pursuant to this Order, the Debtor may continue to use Cash Collateral in the ordinary course of its business, but subject to the terms set forth herein.

IT IS ORDERED, ADJUDGED and DECREED:

1. Debtor's request to use the Cash Collateral pursuant to the Second Cash Collateral Motion is granted *nunc pro tunc* to the Petition Date, and Debtor is authorized to use Cash Collateral in the ordinary course of business, subject to the below terms and conditions, for a period of forty-five (45) days from the entry of this Order, unless or until a Termination Event, as such term is hereinafter defined, occurs prior thereto, or the parties agree to terminate such usage at an earlier date.

2. Debtor shall not use Cash Collateral in any manner or in any amount other than as authorized specifically by this Order.

3. Debtor has established a Debtor-in-Possession bank account with North Alabama Bank, which account complies with all applicable requirements of the Bankruptcy Administrator's Office for the Northern District of Alabama, designated in the following manner: "ADEPT

5

Technologies, LLC, Debtor-in-Possession - Operating Account, Case Number 12-83490-JAC11, Account Number XXX2040" (hereinafter "DIP Account").

4. Debtor shall collect, deposit and maintain all Cash Collateral, whether received prior to, on or after the date of filing its Voluntary Petition in the DIP Account. Debtor shall not co-mingle Cash Collateral with any other monies the Debtor may otherwise collect or receive that are not subject to the security interest of PNC; provided, however, that Debtor's receipt of such other funds shall be disclosed to PNC as part of the Financial Reports (defined herein).

5. As adequate protection to PNC for the use of the Cash Collateral, Debtor hereby grants PNC a first priority replacement lien *nunc pro tunc* as of the Petition Date on and in all assets of the Debtor that comprise the PNC Collateral, including without limitation personal property acquired or generated post-petition by the Debtor, including without limitation all proceeds, products, offspring, rents or profits therefrom, to the same extent and priority as such interest existed pre-petition, and subordinate only to the Carveout as defined below.

6. The continuing lien granted herein in connection with the use of Cash Collateral shall be valid and perfected without the need for the execution, filing or recording of any further documents or instruments, otherwise required to be executed or filed under non-bankruptcy law.

7. The Court's grant of adequate protection pursuant to this Order shall not preclude PNC from seeking, in the event the adequate protection proves inadequate, an administrative expense claim pursuant to § 503(b), or, as necessary, § 507(b) of the Bankruptcy Code, for the value of all Cash Collateral expended by Debtor through this Order.

8. Subject to the terms and conditions of this Order, Debtor is hereby authorized to use Cash Collateral only to satisfy (i) those actual expenses reasonable and necessary to the operation and maintenance of the Debtor's business in accordance with the thirteen (13) week cash projection

6

attached hereto and incorporated herein by reference as Exhibit "A" (hereinafter, the "Cash Requirements Budget"), (ii) the unpaid fees of the Clerk of the Bankruptcy Court and the Office of the United States Bankruptcy Administrator pursuant to 28 U.S.C. § 1930(a) and (b) (the "Statutory Fees") and (iii) the aggregate allowed unpaid fees and expenses payable under sections 330 and 331 of the Bankruptcy Code to any professional persons retained by any order of this Court up to a maximum amount of $50,000.00 through the Termination Date (defined herein) of this Order (said amounts together with the Statutory Fees shall hereinafter be referred to as the "Carveout"). Under no circumstances shall any principal, director, shareholder, member, partner or other owner of Debtor be permitted to receive any distributions or compensation in excess of that shown on the Cash Requirements Budget.

9. Debtor shall deliver to PNC monthly adequate protection payments in the amount of $77,000.00, commencing on October 15, 2013, and continuing on the fifteenth (15th) of each month through the Termination Date (each a "Monthly Adequate Protection Payment"). PNC will apply the Adequate Protection Payments to the $1.2 Million Line of Credit in accordance with the loan documents evidencing such loan.

10. Debtor shall not be authorized to pay any item not specifically set forth herein. Debtor may not exceed the Cash Requirement Budget or any specific line item budgeted amount by more than ten percent (10%), unless prior written consent is obtained from PNC, or such use is authorized by separate Court order. In no event shall Debtor be authorized to use Cash Collateral to fund the analysis or pursuit, either itself or through its attorneys or other consultants, of any claims, offsets, demands, actions and causes of action of any kind (the "Potential Claims and Defenses") against PNC. Without limitation of the foregoing, at no time shall Debtor or any Committee or other person or entity have the right to use Cash Collateral (whether pre-Petition Date or post-Petition

7

Date), or proceeds of either, to prosecute any Potential Claims and Defenses; provided further, all Potential Claims and Defenses of the Debtor with respect to PNC as of the date of this Order are immediately and without further action by any party, to have been forever relinquished and waived.

11. In addition to the limitations imposed by paragraph 10 of this Order, with respect to the budget line item "Contract Reserve" on the Cash Requirements Budget, the following conditions must be satisfied:

(a) The Debtor may only use Cash Collateral from the Contingency Reserve to fund work on contracts and/or purchase orders, and for no other purpose. Under no circumstances shall the Debtor be permitted to use Cash Collateral from the Contract Reserve to fund expenses that are budged in or through existing line item(s) on the Cash Requirements Budget;

(b) Prior to expending any Cash Collateral from the Contract Reserve, the Debtor shall provide PNC with (i) a copy of the new contract or new purchase order necessitating Debtor's use of funds from the Contract Reserve, (ii) a projected budget of all costs necessary to complete such new contract or new purchase order, in reasonable detail as PNC may request, and (iii) a certificate signed by Debtor's authorized representative affirming that the expenses for which funds are needed from the Contract Reserve are not included in any existing line item(s) on the Cash Requirements Budget; and

(c) The Debtor will provide such additional documents or information as PNC shall reasonably request concerning the use of funds from the ContractReserve.

8

Case 12-83490-JAC11    Doc 165    Filed 09/26/13    Entered 09/26/13 14:11:36    Desc
Main Document    Page 8 of 13

12. The Debtor, on its own behalf and on behalf of its estate, hereby waives and releases with respect to PNC, all rights, remedies or claims for relief, if any, under § 506(c) of the Bankruptcy Code. No action or failure to act by PNC shall be deemed a consent to any charge, lien, assessment or claim against the PNC Collateral under § 506(c) of the Bankruptcy Code or otherwise, and no cost or expense of administration shall be imposed against PNC pursuant to § 506(c) of the Bankruptcy Code or otherwise.

13. In allowing the use of Cash Collateral as provided for herein and in accordance with this Order, PNC is not required and has no obligation to advance any amounts to the Debtor.

14. The Debtor shall provide PNC on the 15th day of each month a report reflecting a comparison of the monthly budget with actual results from operations.

15. The Debtor shall provide PNC a copy of the following documents (the "<u>Financial Reports</u>") on a monthly basis (unless otherwise noted below), beginning October 15, 2013 and continuing on the 15th and last day (or on the first business day thereafter) of each following month:

    (a) Within five (5) business days of Debtor's receipt, a copy of each bank statement, and, if requested, each check, deposit slip and check register for each bank account maintained by Debtor;

    (b) A separate statement reflecting each account receivable or other receivable and a statement of aging of accounts receivable, divided between pre-Petition Date accounts receivable and post-Petition Date accounts receivable;

    (c) A statement of cash receipts and cash disbursements in the same format as the Cash Requirements Budget, using the same accounting categories, for the prior thirty (30) day period;

    (d) On or before the last day of each month, an updated rolling 13-week budget.

9

(e) A balance sheet.

(f) A statement of inventory on hand calculated by starting with Inventory on hand at the beginning of such thirty (30) day period, and then for such thirty (30) day period (i) adding the purchases and (ii) subtracting sales, calculated at cost.

The Financial Reports required by this order or any notices to PNC shall be sent by electronic mail to PNC to the attention of John P. North at john.north@pnc.com, and counsel for PNC, Maynard, Cooper & Gale, P.C. to the attention of Matthew W. Grill at mgrill@maynardcooper.com. Additionally, at the time they are filed, copies of the monthly operating reports and any attachments thereto that are filed with the Court and by the Debtor shall be served on PNC in accordance with this paragraph.

16. Upon reasonable request, PNC, or its authorized agents or consultants shall have the right to inspect the Debtor's books of accounting, Debtor's checking account records, invoices reflecting disbursements, and each other document reflecting the use of Cash Collateral during the period of time covered by this Order or any future Order authorizing the Debtor's continued use of the Cash Collateral (the "Books and Records"). PNC's representative will refrain, to the extent reasonably possible, from interfering with Debtor's normal business operations during such inspections. Debtor shall comply with all reasonable requests of PNC, or its authorized agents or consultants, to review and examine Debtors' Books and Records.

17. The Debtor shall be in default under the provisions of this Order if it fails to comply with or perform fully any of its obligations as provided herein.

18. This Order shall terminate upon the earlier to occur of the following (each, a "Termination Event"), unless otherwise agreed by the parties or ordered by the Court: (a) forty-five (45) days after entry of this Order by the Court (the "Termination Date"); or (b) upon Debtor's

10

failure to cure upon three (3) days' notice to Debtor as provided below of (i) appointment of a Chapter 11 Trustee; (ii) conversion of this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code; (iii) dismissal of this Chapter 11 case, (iv) the sale of substantially all of Debtor's assets pursuant to § 363 of the Bankruptcy Code, (v) PNC being granted relief from the automatic stay provided by § 362 of the Bankruptcy Code, (vi) the Debtor's cessation of all non-liquidation income-producing activity of the Debtor, (vii) the Debtor's use of Cash Collateral outside the specific uses authorized by this Order, (viii) if any representation or warranty made by the Debtor in the Cash Collateral Motion shall have been false when made, (ix) the entry of an order determining that PNC's interests are subordinate to any other creditor, (x) the receipt by Debtor's counsel of a written notification from PNC of a violation of any of the provisions of this Order.  All such notices shall be sent to the attention of Kevin D. Heard at kheard@heardlaw.com.  The termination of Debtor's right to use Cash Collateral shall not affect the rights of PNC as granted herein.  PNC is under no obligation to grant Debtor an extension of this Order or to enter into any further agreements with Debtor.

19. All of the terms and provisions of this Order, including without limitation the security interests and liens created and perfected hereby, in the priority established hereby, shall be binding upon Debtor and any subsequently appointed trustee for Debtor, either under Chapter 7 or Chapter 11 of the Bankruptcy Code, and upon all creditors of Debtor, and all other parties-in-interest.

20. Representatives of PNC or its authorized agents or consultants shall be authorized to visit and remain on the business premises of Debtor at any reasonable time or times upon reasonable notice to Debtor, to inspect the assets of Debtor and to verify or to obtain supporting details concerning the financial information to be provided to PNC hereunder; provided, such

11

representatives will comply with any security requirements of Debtor's business and will not unreasonably interfere with Debtor's business operations.

21. The automatic stay provisions of section 362 of the Bankruptcy-Code are hereby modified, lifted and terminated as to PNC to the extent necessary to implement the provisions of this Order.

22. Debtor shall keep all insurance policies required by the PNC loan documents in full force and effect at all times or, in the alternative, Debtor shall reimburse PNC for payments made by it to maintain insurance on PNC's collateral.

23. In the event and to the extent that the value of PNC's collateral diminishes or deteriorates as a result of the operations of Debtor or the use of the Cash Collateral, other than ordinary depreciation of any personal property included in the pre-Petition Date collateral, PNC may apply, pursuant to Section 507(b) of the Bankruptcy Code, for a super-priority administrative expense claim against Debtor and Debtor's bankruptcy estate.

24. Notwithstanding anything to the contrary, Debtor shall retain the right to petition the Court to terminate the terms of this Order in the event that Debtor obtains substitute post-petition financing.

25. The terms and conditions of any contracts, notes and agreements between PNC and Debtor shall remain the same, unless explicitly modified herein.

26. Nothing contained in this Order shall be deemed to be a waiver by PNC of its rights to request additional or further protection of its interests in any property of Debtor, to move for relief from the automatic stay, to seek the appointment of a trustee or examiner or the dismissal of the case, or to request any other relief in this case, nor shall anything herein constitute an admission by PNC of the quantity, quality or value of any of PNC's collateral securing the

obligations, or constitute a finding of adequate protection with respect to the interests of PNC in any of the Cash Collateral.  PNC shall be deemed to have reserved all rights to assert entitlement to the protections and benefits of Section 507(b) of the Bankruptcy Code in connection with any use, sale or other disposition of any of its Cash Collateral, to the extent that the protection afforded by this Order proves to be inadequate; provided, however, that nothing herein shall constitute a waiver to subsequently challenge any adequate protection provided to PNC hereunder.

Dated:  September 26, 2013

    /s/  Jack Caddell
Jack Caddell
U.S. Bankruptcy Judge

CONSENTED TO BY:

**MAYNARD, COOPER & GALE, P.C.**

| | |
|---|---|
| **KEVIN C. GRAY** | **KEVIN D. HEARD** |
| **MATTHEW W. GRILL** | Heard Ary, LLC |
| **CHRISTINE K. BORTON** | 307 Clinton Ave. West, Suite 310 |
| Maynard, Cooper & Gale, P.C. | Huntsville, Alabama 35801 |
| 1901 6th Avenue North, Suite 2400 | Telephone:   (256) 535-0817 |
| Birmingham, Alabama  35203-2618 | |
| Telephone:   (205) 254-1000 | **ATTORNEY FOR ADEPT TECHNOLOGIES, LLC** |
| **ATTORNEYS FOR PNC BANK** | |

13

Case 12-83490-JAC11    Doc 165    Filed 09/26/13    Entered 09/26/13 14:11:36    Desc
Main Document      Page 13 of 13