IN THE UNITED STATES BANKRUPTCY COURT FOR
THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | |
| ADEPT TECHNOLOGIES, LLC | ) | CASE NO. 12-83490-11 |
| | ) | |
| Debtor. | ) | CHAPTER 11 |
| | ) | |

**DEBTOR'S AMENDED CHAPTER 11 PLAN OF
REORGANIZATION DATED MARCH 21, 2014**

In accordance with 11 U.S.C. § 1127, Adept Technologies, LLC, Debtor-in-possession ("Debtor") in the above captioned Chapter 11 case files this Amended Plan of Reorganization Dated March 21, 2014 (the "Plan"), in the United States Bankruptcy Court for the Northern District of Alabama, Northern Division ("Bankruptcy Court" or "Court").

ARTICLE I
DEFINITIONS

The following terms shall have the following meanings unless the context otherwise requires and, unless otherwise indicated, the singular shall include the plural. The definitions contained in §§ 101 and 1101 of the Bankruptcy Code shall control unless different definitions are stated herein, in which case the definitions as stated herein shall control for purposes of this Plan.

1.01 **"Accounting Fees"** means accounting and/or administrative management fees for preparing tax returns and other financial reports.

1.02 **"Administrative Expense Claim"** means a Claim for any cost or expense of administration of the Reorganization Case allowed under § 503(b) of the Bankruptcy Code, including without limitation any Claim for the actual and necessary costs and expenses of preserving the Debtor's estate and all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court.

1.03 **"Allowed Amount"** means the amount of any Allowed Claim.

1.04 **"Allowed Claim"** means:

(A)   Any Claim in any Class:

   (i)   proof of which has been filed with the Bankruptcy Court prior to the Bar Date, or which has been scheduled by the Debtor and not shown as disputed, contingent, or unliquidated; and

   (ii)  to which no objection has been made within the Disclosure Statement or to which no objection is filed no later than thirty (30) days after the Effective Date or which has been allowed by Final Order; or

(B)   Any Administrative Claim for which a motion or fee application has been filed and approved by the Court.

1.05   **"Allowed Secured Claim"** means a Claim that is both an Allowed Claim and a Secured Claim.

1.06   **"Allowed Unsecured Claim"** means a Claim that is both an Allowed Claim and an Unsecured Claim.

1.07   **"Bankruptcy Code or Code"** means Chapter 11 of Title 11, United States Code.

1.08   **"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the Northern District of Alabama, Northern Division.

1.09   **"Bankruptcy Rule"** or **"Bankruptcy Rules"** means one or more of the Federal Rules of Bankruptcy Procedure.

1.10   **"Bar Date"** means the date established by the Court as the deadline for filing all Claims. The Court scheduled February 28, 2013, as the Bar Date for all claimants to file proofs of claim, including governmental units and/or agencies. Claims filed after the Bar Date, which are not otherwise Allowed Claims, will be disallowed and of no effect.

1.11   **"Claim"** means a claim or interest as defined by the Code.

1.12   **"Class"** means one of the classes of Allowed Claims or equity interests established by the Plan.

1.13   **"Confirmation Date"** means the date on which the Court pursuant to § 1129 of the Bankruptcy Code enters the Confirmation Order.

1.14   **"Confirmation Order"** means the Final Non-Appealable Order of the Court determining that the Plan meets the requirements of the Bankruptcy Code and is entitled to confirmation.

1.15 **"Court"** means the United States Bankruptcy Court for the Northern District of Alabama, Northern Division.

1.16 **"Debtor"** means Adept Technologies, LLC.

1.17 **"Effective Date"** means the date on which the Confirmation Order becomes a Final Order.

1.18 **"Filing Date"** with respect to the Debtor means October 31, 2012, the date on which the Reorganization Case was commenced by the Debtor filing for relief under Chapter 11 of the Bankruptcy Code.

1.19 **"Final Decree"** means the Order entered by the Bankruptcy Court, which closes the case.

1.20 **"Final Order"** means:

    A.     An order of the Court that has become conclusive of all matters adjudicated by such order and:

        (i)     that is not the subject of a pending appeal and for which the time to appeal or seek review or rehearing of such order has expired, or
        (ii)     that is the subject of a pending appeal but has not been stayed or as to which no supersedeas bond has been posted.

1.21 **"IRS"** means the Internal Revenue Service.

1.22 **"Plan"** means this First Amended Plan of Reorganization and any subsequent amendments.

1.23 **"Post-Petition"** means the Filing Date and the period after the Filing Date.

1.24 **"Pre-Petition"** means the period preceding the Filing Date.

1.25 **"Priority Claim"** means those expenses and claims which may be provided for under 11 U.S.C. Section 507 of the Code.

1.26 **"Proponent"** means Debtor.

1.27 **"Pro-rata Share"** means the same proportions that a given Allowed Claim within a Class bears to the total Allowed Claim of such Class.

1.28 **"Reorganization Case"** with respect to the Debtor means the reorganization case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on or about October 31, 2012 and pending in the Bankruptcy Court under Case No. 12-82262-JAC11.

**1.29** **"Secured Claim"** means a Claim allowed as secured in the real or personal property of Debtor.

**1.30** **"Unsecured Claim"** means an allowed Claim other than an Administrative Expense Claim, Priority Claim, or a Secured Claim.

## ARTICLE II
## CLASSES AND CLASSIFICATIONS OF CLAIMS AND INTEREST

**1.0** **Administrative Expense Claims:** This class shall consist of all administrative expense claims of the Debtor's Chapter 11 case as allowed pursuant to § 503(b) of the Code and given priority in accordance with § 507(a)(1) of the Code. This class is divided into the following sub-classes:

    **1.01** **Heard Ary, LLC:** This sub class consists of the administrative expense claim of Heard Ary LLC for attorney fees provided to the Debtor in the representation of this case.

    **1.02** **Lanier Ford Shaver & Payne, P.C.:** This sub class consists of the administrative expense claim of Travis S. Jackson of the law firm Lanier Ford Shaver & Payne, P.C. for representing the Debtor in case in the United States District Court for the Northern District of Alabama styled *Tazewell Shepard, III, as Trustee for the Bankruptcy Estate of Bryant Harris v. KRB, LLC and Adept Technologies, LLC*; Case No. 5:11-cv-03073-AKK

**2.0** **Priority Claims:**

    **2.01** **Internal Revenue Service ("IRS")**: This class consists of the unsecured priority claim held by the United States of America Department of Treasury - Internal Revenue Service.

    **2.02** **State of Alabama Department of Revenue ("ADOR"):** This class consists of the unsecured priority claim held by Alabama Department of Revenue.

**3.0** **Secured Claims:** Holders of secured claims are divided into the following sub-classes:

    **3.01** **First Volunteer Bank ("FVB"):** This class consists of the secured claim held by First Volunteer Bank.

    **3.02**   **PNC Bank ("PNC"):** This class consists of the secured claim held by PNC Bank.

    **3.03**   **Southern Development Council, Inc. ("SDC"):** This class consists of the secured claim held by Southern Development Council, Inc.

    **3.04**   **Southern Development Council, Inc. ("SDC"):** This class consists of the secured claim held by Southern Development Council, Inc.

    **3.05**   **Birmingham City Wide Local Development Co:** This class consists of the secured claim held by Southern Development Council, Inc.

**4.0**   **Non-Priority General Unsecured Claims**: This Class consists of all Allowed Unsecured Claims. These Claims are impaired.

**5.0**   **Equity Interest Holder:**

    **5.01**   **Brad Fielder:** This Class consists of the equity shareholder of the debtor which consists of Mr. Brad Fielder who owns fifty one percent (51%) of the outstanding membership interests in Debtor.

    **5.02**   **Chad Fielder:** This Class consists of the equity shareholder of the debtor which consists of Mr. Chad Fielder who owns forty nine (49%) of the outstanding stock in Debtor.

## ARTICLE III
## IMPAIRMENT AND TREATMENT OF CLAIMS UNDER THE PLAN

The Plan will be summarized by incorporation of pertinent portions. Other provisions of the Plan are extremely important, especially Article I, Definitions. The Plan should be read in full.

**1.0**   **Administrative Expense Claims:** Administrative Expense Claims of the Debtor's Chapter 11 case are allowed pursuant to § 503(b) of the Code and given priority in accordance with § 507(a)(2) of the Code. The Debtor anticipates that the following Administrative claim will be or have been granted by the Court. They are divided into the following sub-classes:

    **1.1**   **Heard Ary, LLC:** The Debtor has incurred legal fees to Heard Ary, LLC in the approximate amount of $67,883.00 as of February 28, 2013, for professional services rendered in this case. While the total amount of professional fees cannot currently be

calculated all such fees, are subject to being approved by the Bankruptcy Court prior to payment. This administrative claim will be paid as allowed by the Bankruptcy Court.

1.2 **Lanier Ford Shaver & Payne, P.C.:** Travis S. Jackson of the law firm Lanier Ford Shaver & Payne, P.C. is entitled to an administrative expense in the amount of $6,395.06 in attorney fees and expenses incurred for legal services provided to the Debtor in defense of a lawsuit filed against the Debtor in the United States District Court for the Northern District of Alabama styled *Tazewell Shepard, III, as Trustee for the Bankruptcy Estate of Bryant Harris v. KRB, LLC and Adept Technologies, LLC*; Case No. 5:11-cv-03073-AKK. This administrative claim shall be paid as allowed by the Bankruptcy Court.

2.0 **Priority Claims:**

2.01 **Internal Revenue Service ("IRS")**: This class consists of the unsecured priority claim held by Internal Revenue Service which is impaired. The amended claim for pre-petition tax debt filed by the IRS in the sum of $546,260.30 shall be allowed as filed.

The total unsecured priority debt in the sum of $445,637.48 shall be amortized over a period of sixty (60) months at an interest rate of 3.00%. The Debtor shall remit sixty (60) monthly payments in the sum of $8,007.52 each to the IRS. The first monthly installment shall be due on or before April 15, 2014 and subsequent installments shall be due on the 15th day of each month thereafter until said debt has been paid in full. The Debtor reserves the right to prepay the portion of the IRS unsecured priority claim during the referenced payment period.

The unsecured general portion of the amended claim shall be paid the same as the other unsecured general claims as provided for in Class 4.0.

The Debtor shall timely file and pay in full any and all post-petition federal Form 941 tax returns beginning with the Form 941 for the tax period ended June 30, 2013 and with the Form 940 for the tax period ended December 31, 2013.

During the pendency of the repayment period for the pre-petition tax debt owed to the IRS, in the event the Debtor fails to:

Remit any monthly payment on the IRS secured and unsecured priority claim as each payment becomes due; or,

Pay in full any liability for the post-petition Form 941 tax period ended December 31, 2012 (partial) and March 31, 2013 as stated herein; or,

Timely file any and all post-petition federal Form 941 tax returns beginning with the Form 941 for the tax period ended June 30, 2013 and the Form 940 tax return for the tax period ended December 31, 2013 by the due date for each respective tax period and upon the filing of the applicable Form 941 and Form 940 tax returns beginning with the Form 941 for the tax period ended June 30, 2013 and the Form 940 tax return for the tax period ended December 31, 2013 remit any balance due the IRS; the automatic stay will be considered terminated and the IRS may proceed with its legal and/or administrative remedies to collect any and all sums due on its amended claim and any post-petition liability.

The IRS tax debt for the tax periods listed on the amended IRS claim shall not be the subject of any discharge entered in this case until the Debtor has complied with the terms of the repayment of the terms of the IRS debt as set forth herein.

For the tax periods listed on the amended claim, the time periods found at 26 U.S.C. 6503(b) and 6503(h) are tolled during the term for repayment stated in this plan.

For the tax periods listed on the claim filed by the IRS, the time periods found at 11 U.S.C. § 507(a)(8) are tolled during the term for repayment period stated in this plan.

The IRS reserves the right to adjust the amount of its claim if it determined through the IRS administrative process that the amounts due on any tax period listed on the IRS claim are due to be adjusted.

**2.02** **State of Alabama Department of Revenue ("ADOR"):** This class consists of the unsecured priority claim held by Alabama Department of Revenue which is impaired. The Debtor owes ADOR the sum of $41,000.00 for withholding taxes of the 1st, 2nd, and 3rd quarters of 2012.

The total unsecured priority debt in the sum of $41,000 shall be amortized over a period of sixty (60) months at an interest rate of 3.00%. The Debtor shall remit sixty (60) monthly payments in the sum of $736.72 each to the ADOR. The first monthly installment shall be due on or before April 15, 2014 and subsequent installments shall be due on the 15th day of each month thereafter until said debt has been paid in full. The Debtor reserves the right to prepay the portion of the IRS unsecured priority claim during the referenced payment period.

**3.0** **Secured Claims**

    **3.01** **First Volunteer Bank ("FVB"):** This class consists of the secured claim held by First Volunteer Bank which is impaired. The Debtor owes FVB the sum of $141,307.50, which is secured by property located at 141 Nick Fitchard Road,

Huntsville AL 35806 ("Real Property"). As part of its confirmed plan the Debtor shall restructure its debt with FVB and shall execute a new promissory note with FVB which terms shall include that: (1) First Volunteer Bank retains its first lien position with respect to the Real Property, (2) the inclusion of the existing pre-petition proof of claim amount ($141,307.50) in the new loan amount, (3) the inclusion of all post-petition accrued interest in the new loan amount, (4) the inclusion in the new loan amount of the $2,500.00 attorney fee incurred by the Bank in pursuing its adequate protection remedy and all other reasonable post-petition attorney fees that may be incurred by the Bank in this bankruptcy case, and (5) a 230 month loan term with a 4.75% annual interest rate. The Debtor's adequate protection payments which have been previously authorized by the Court shall be credited against the loan balance. The approximate amount of the Debtor's monthly payment to FVB under the restructured note is $939.05.

**3.02** **PNC Bank ("PNC"):** This class consists of the secured claim held by PNC Bank which is impaired. Pre-petition the Debtor was indebted to PNC on account of five separate promissory notes and four separate equipment lease agreements (hereinafter "Indebtedness"). The Indebtedness is secured by real estate mortgages on real property located at 2865 Wall Triana Hwy, Huntsville AL; 527 Plummer Road, Huntsville, Madison County, Alabama; and 141 Nick Fitchard Road, Huntsville, Alabama. Additionally, the Indebtedness is secured by first priority security interest in the Debtor's inventory, chattel paper, accounts, equipment and general intangibles. The Debtor will restructure the Indebtedness with PNC and pay, settle and satisfy the claims of PNC Bank as set forth in the chart attached as Exhibit "A". In addition to the payment of the amounts shown in the Chart, upon the entry of a Final Order confirming the Debtor's plan of reorganization, the Debtor will also execute a new promissory note(s) with PNC (hereinafter "Restructured Note"). The term of this Restructured Note shall be as follows:

a. The total amount of the Restructured Note shall be the sum of $5,682,858.93 which sum constitutes the aggregate amount of principal and interest due to PNC as of February 28, 204 less credit for payments received after that date.

b. Commencing on the 15th day of the month following entry of the Final Order confirming the Plan (the "Confirmation Order"), the Debtor will commence making monthly debt service payments to PNC of $60,728.98. The PNC Debt will accrue interest at a fixed rate of interest of 9.25%, and will mature on December 15, 2016

(the "Maturity Date"). The Maturity Date shall not be more or less than 2.7 months from the entry of a Final Order approving the Confirmation Order.

c. PNC will retain its priority lien position in all of the PNC Collateral, and a first priority replacement lien on and in all assets of the Debtor that comprise the PNC Collateral, including without limitation personal property acquired or generated by the Debtor post-petition, including without limitation all proceeds, products, rents or profits therefrom.

d. In addition to customary terms, the Restructured Note (which incorporates the terms as provided for in the Plan) will also contain financial covenants which shall be the same as those that were in the pre-petition loan documents with PNC and shall not be more restrictive.

e. Debtor will continue to provide monthly reporting to PNC in substantially that provided throughout the Bankruptcy Case, and there will be a freeze on the compensation paid to Chad and Brad Fielder at the level reported as of December 31, 2013 through the Maturity Date. As part of the monthly reporting package to PNC, the Debtor shall provide PNC with a Contract Revenue Summary schedule detailing its current contracts, including customer name and address, and provide sufficient information to identify customer contracts on the A/R aging reports provided to PNC. The Debtor will provide PNC with its 2012 tax return as soon as possible. Chad Fielder and Brad Fielder (the "Guarantors") shall provide current, updated and attested personal financial statements on forms to be provided by PNC, and personal tax returns for tax years 2011 and 2012. The Restructured Note shall provide that the Guarantors will provide updated personal financial statements and tax returns within thirty (30) days of filing tax returns with the Internal Revenue Service.

f. Upon entry of the Confirmation Order, the Debtor will pay to PNC the sum of $25,000, to be applied toward PNC's legal fees and costs of collection. The final payoff of the PNC Debt will include all legal fees and costs of collection, including without limitation, appraisal fees and fees paid to Warren Averett, incurred prior to and over the course of the Bankruptcy Case and through the Maturity Date.

g. The Debtor shall provide PNC with a monthly budget, projecting the Debtor's monthly cash requirements (the "Cash Requirements Budget"), and containing year-to-date cumulative information reflecting actual results.

h. The Debtor shall provide PNC with an annual capital expenditure budget. PNC will include a capital expenditures covenant in the Loan Agreement.

i. The Debtor shall establish a "Contract Reserve," and deposit a minimum of $25,000 per month into the Contract Reserve account with a ceiling of $250,000. Upon

reaching a balance of $250,000, the $25,000 monthly deposit shall instead be paid to PNC for application to the PNC Debt. The Debtor may only use cash from the Contract Reserve to fund work on new contracts and/or purchase orders, and for no other purpose. Under no circumstances shall the Debtor be permitted to use cash from the Contract Reserve to fund expenses that are budgeted in existing line items on the Cash Requirements Budget. The Contract Reserve account shall be established at PNC, and pledged as additional collateral for the PNC Debt.

j. PNC will be entitled to an annual review of the Debtor/Post-Confirmation Borrower's financial records by an outside firm, possibly Warren Averett, at Debtor's expense.

k. The Loan Agreement shall contain a Cash Flow Recapture provision, calculated annually. Such cash flow recapture shall be through a quarterly measurement of operating cash flow in excess of 1.25 times fixed charges. Any excess cash reflected in this calculation will be paid to PNC for application to the PNC Debt. Such excess cash shall only be paid provided the Debtor/Post-Confirmation Borrower has a minimum of $250,000 in cash remaining after such recapture. The below formula sets forth how excess operating cash flow will be determined:

Excess Cash Flow Calculation (measured annually)

Net Income
Add back Income Taxes
Add back Interest Expense
Add back Depreciation
Add back Amortization
**Equals Cash Flow Available for Fixed Charges**

Debt Service – PNC
Debt Service – SBA
Debt Service – Other Mandatory Plan Payments
Cash Income Taxes
Contract Reserve (or payments to PNC if Contract Reserve has reached $250,000 limit)
Budgeted Capital Expenditures
**Total Fixed Charges**
**Total Fixed Charges x 1.25**
**Excess Over 1.25 Fixed Charges**

    **3.03**     **Southern Development Council, Inc. ("SDC"):** This class consists of the secured claim held by Southern Development Council, Inc., which is impaired. The Debtor owes SDC the sum of $2,217,738.00, which is secured by property located at 2865 Wall Triana Highway, Huntsville, AL 35824 (Loan #3283776009). The Debtor will restructure this debt and assume the debt according to the terms and conditions of the existing finance agreement in place by making monthly payments to SDC in the amount of $16,931.28. This creditor will retain its lien upon this collateral until such time as the debt is paid in full.

    **3.04**     **Southern Development Council, Inc. ("SDC"):** This class consists of the secured claim held by Southern Development Council, Inc., which is impaired. The Debtor owes SDC the sum of $79,317.62, which is secured by property located at 141 Nick Fitchard Rd. Huntsville AL 35806 (loan #1451964506). The Debtor will restructure this debt and assume the debt as restructured by making monthly payments to SDC in the amount of $736.12. This creditor will retain its lien upon this collateral until such time as the debt is paid in full.

    **3.05**     **Birmingham City Wide Local Development Co.:** This class consists of the secured claim held by Birmingham City Wide Local Development Co. (SBA), which is impaired. Pre-petition debtor owed SBA the sum of $133,633.63, which is secured by property located at 527 Plummer Rd, Huntsville AL 35806 (loan # 9162864500). The Debtor will restructure this debt and assume the debt as restructured by making monthly payments to SBA in the amount of $1,352.34. This creditor will retain its lien upon this collateral until such time as the debt is paid in full.

**4.0**     **Non-Priority General Unsecured Claims**: This Class consists of all Allowed Unsecured Claims. These Claims are impaired. The total amount of Unsecured Claims exceeds $248,790. These Claims are of every kind and nature including claims arising from deficiencies, services rendered, contract damage claims or open account claims, and damages arising from or related to any lawsuits, or un-liquidated or contingent claims. It also includes any debt which is filed as a Priority or Secured Claim but, which is allowed as an Unsecured Claim by the Bankruptcy Court. Holders of general unsecured Claims without Priority which are Allowed Claims shall be paid thirty percent (30%) of their Allowed Claim over a period of 60 months from the effective date of the Plan.

**5.0** **Equity Interest Holder:**

**5.01** **Brad Fielder:** This Class consists of the equity shareholder of the debtor which consists of Mr. Brad Fielder who owns fifty one percent (51%) of the outstanding membership interests in Debtor. The claim of the equity interest holder is impaired. Mr. Fielder will retain his equity interest in the Debtor, he shall not, however, receive a distribution based on his Claim under the Plan until allowed Administrative claimants, Priority claimants and unsecured claimants have been paid or otherwise satisfied as provided for herein.

**5.02** **Chad Fielder:** This Class consists of the equity shareholder of the debtor which consists of Mr. Chad Fielder who owns forty nine (49%) of the outstanding stock in Debtor. The claim of the equity interest holder is impaired. Mr. Fielder will retain his equity interest in the Debtor, he shall not, however, receive a distribution based on his Claim under the Plan until allowed Administrative claimants, Priority claimants and unsecured claimants have been paid or otherwise satisfied as provided for herein.

ARTICLE IV
PROVISIONS FOR REJECTION AND ASSUMPTION
OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor has also the following expired equipment leases with PNC Bank: lease No. 758001; 758002; 758003; and 758004. These leases are to be assumed by the Debtor as part of the treatment of the claim of PNC Bank as discussed in Class 3.02. In addition to these equipment leases Debtor also has an equipment lease with Lease South LLC c/o First Commercial Bank P.O. No. 3627. These equipment leases are necessary for business operations of Debtor and as such all equipment leases will be assumed pursuant to §1123(b)(2) of the Bankruptcy Code upon confirmation of this Plan.

Moreover, the Debtor also is a party to various contracts either as a sub-contractor or as a prime with multiple companies and legal entities including the United States which it entered into in the ordinary course of its business. <u>Unless expressly stated herein, the Debtor hereby assumes, ratifies, and confirms the terms and provisions of all such executory contracts pursuant to §1123(b)(2) of the Bankruptcy Code as part of this Plan.</u>

The Debtor will also assume its consulting contract with Optimal Consulting Solutions, Inc. which provides accounting and other consulting services to the Debtor post petition.

All parties to any executory contract or lease rejected shall have thirty (30) days from the Confirmation Date in which to file a claim for damages, if any, resulting from such rejection or such claims will be disallowed and will not be eligible to participate in distributions under this Plan.

## ARTICLE V
## MEANS OF EXECUTION OF THE PLAN

**5.01** **Means of Implementation of the Plan.** The Debtor by continuing to operate its business has increased the likelihood of the success of the Plan. The Debtor will execute the notes provided for herein. Debtor shall also execute such additional documents as are necessary to comply with the terms of the Plan.

**5.02** **Execution of All Documents**. The Plan authorizes the Debtor to execute all documents necessary to carry out the terms of the Plan.

**5.03** **Objections to Claims and Allowance**. No payment or distribution shall be made to the holder of a Claim against which an objection has been filed not later than thirty (30) days after the Effective Date until any such objection to a Claim has been determined by Final Order of the Court. Disputed and unliquidated Claims shall be estimated for purposes of voting and unless the Court orders otherwise, payments to holders of contested Claims that are subsequently allowed shall be made in accordance with the terms of the Plan. Contest of Claims shall be filed with the Court no later than sixty (60) days after the Effective Date.

**5.04** **Retention of Assets**. Except as provided for in the Plan, or in the order confirming the Plan, on the Confirmation Date, the Debtor shall be vested with all of the property of the estate, and the Debtor shall retain all property rights free and clear of all liens, charges, and other interests of the creditors.

## ARTICLE VI
## MODIFICATION AND CONFIRMATION OF THE PLAN

**6.01** **Pre-Confirmation Modifications**. Debtor may propose modifications hereof at any time prior to Confirmation without leave of this Court, upon such notice as may be required by this Court. If such modification is made after acceptance hereof, this Plan as so modified shall be deemed

accepted by all holders of Claims and Equity Interests that have previously accepted this Plan, provided that this Court finds that such modification would not materially and adversely change the treatment of the holders of Claims or Equity Interests that have not accepted such modification in writing.

**6.02** **Post-Confirmation Modifications**.

(a) Except as provided in Subsection (b) of this section, Debtor may modify this Plan after Confirmation only if this Court determines that this Plan as so modified meets all of the requirements for confirmation.

(b) Notwithstanding Subsection (a) of this section, the Debtor may modify this Plan during the period between the Confirmation Date and the "substantial consummation," provided that this Court determines only that such modification does not materially and adversely change the treatment of Claims or Equity Interests but merely remedies a defect or omission or reconciles an inconsistency in or between this Plan and/or the Confirmation Order in such manner as may be necessary to carry out the purposes and effect hereof.

**6.03** **Effect of Confirmation**

(a) Upon Confirmation, the provisions hereof shall bind the Debtor and each holder of a Claim whether or not (1) the Claim of such holder is impaired, hereunder, or (2) such holder has accepted this Plan.

(b) Except as otherwise provided herein or in the Confirmation Order, Confirmation vests all of the property of the estate in Debtor, free and clear of all Claims.

(c) Confirmation discharges the Debtor from any debt that arose before the Confirmation Date and any Claim of a kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (1) a proof of claim is filed with respect thereto, (2) the debt appears in the schedules of liabilities filed by the Debtor, (3) the debt is allowed, or (4) the holder of such debt has accepted this Plan.

(d) Confirmation shall constitute approval or ratification by this Court of the assumption or rejection of the Debtor's executory contracts and unexpired leases pursuant to Article IV hereof.

(e) Confirmation shall constitute approval by this Court of all financing arrangements,

leases, contracts, and other actions that the Debtor proposes in the Disclosure Statement or herein, to enter into, make, or take in connection with implementation hereof, including the execution of any documents as of the Effective Date.

# ARTICLE VII
# DISCHARGE

Upon completion of all payments under the Plan, Debtor, shall receive a discharge of any and all debts of the Debtor that arose at any time before Confirmation, including but not limited to, all principal and interest, whether accrued before or after the Filing Date, pursuant to § 1141 (d) (1) and (d)(5) of the Code. The discharge shall be effective as to each Claim, regardless of whether a proof of claim therefore was filed, whether the Claim is an allowed claim, or whether the holder thereof votes to accept the Plan. The rights afforded in the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims and interests of any nature whatsoever. All creditors shall be precluded from asserting against the Debtor or his assets or properties any claim which arises from or relates to any act, omission or transaction of any kind that occurred prior to the Confirmation Date.

# ARTICLE VIII
# RETENTION, ENFORCEMENT AND WAIVER OF CLAIMS

**8.1** Pursuant to § 1123(b)(3) of the Code, the Debtor shall retain and may enforce any and all claims of the Debtor except claims waived, relinquished, or released in accordance with the Plan.

**8.2** No party in interest except the Debtor shall maintain or commence an action to recover a preference as defined in § 547(b) of the Code after the Confirmation Order is entered.

**8.3** Contests of Claims shall be filed with the Court not later than thirty (30) days after the Effective Date.

# ARTICLE IX
# JURISDICTION OF THE COURT

**9.01** **Continuing Jurisdiction**. The Court shall retain and have exclusive jurisdiction over the Reorganization Case for the following purposes:

(a) To determine any and all objections to the allowance of Claims or Interests;

(b) To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan;

(c) To determine any applications or motions pending on the Effective Date for the rejection, assumption, or assumption and assignment of any executory contract and to hear and determine, and if need be, to liquidate any and all Claims arising therefrom;

(d) To determine any and all applications, adversary proceedings, and contested matters that may be pending on the Effective Date;

(e) To consider any modification of this Plan, remedy any defect or omission or reconcile any inconsistency in any Order of the Court, to the extent authorized by the Court;

(f) To determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or that may involve or affect the value of assets of the Company administered by the Plan;

(g) To consider and act on the compromise and settlement of any Claim against or cause of action by or against the Debtor arising under or in connection with the Plan;

(h) To issue such orders in aid of execution of the Plan to the extent authorized by § 1142 of the Bankruptcy Code;

(i) To enforce the workout agreement;

(j) To determine such other matters as may be set forth in any order or orders confirming the Plan or which may arise in connection with the Plan or any other Order or Orders confirming the Plan.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

**10.01** **Prior Court Orders.** All prior orders entered by the United States Bankruptcy Court for the Northern District of Alabama are hereby incorporated by reference, including their terms, conditions,

benefits, requirements and obligations.

**10.02    Cramdown.**    With respect to any Class not accepting the Plan, the Proponent does hereby request confirmation of the Plan pursuant to § 1129(b) of the Bankruptcy Code on the grounds that the Plan does not discriminate unfairly and is fair and equitable with respect to each Class of Claims that are impaired.

**10.03    Quarterly Fees.**    The Debtor will be making its quarterly fees to the Bankruptcy Administrator pursuant to 28 U.S.C. § 1930.  Debtor will continue to make these payments as required Post-Petition.

**10.04    Compliance with Tax Requirements.** In connection with the Plan, the Debtor will comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.

**10.05    Retention of Liens.**  Each creditor whose Claim is secured by a lien or mortgage on property of the Debtor shall retain such lien or mortgage until such creditor's Allowed Claim is paid in full according to the treatment proposed under the Plan at which time the lien shall be released.

**10.06    Employment and Payment of Professionals**.

(a)    During the period between the Confirmation Date and the Effective Date, Debtor may (1) continue to avail itself of the services of professional persons whose employment was approved at or prior to Confirmation in completing the administration of this case and in the consummation and performance hereof, and (2) if necessary and with the approval of this Court, employ additional professional persons to render such services.

(b)    With respect to services rendered and expenses incurred in or in connection with this case during such period by any such professional person, the professional person may render periodic billings therefore to the Debtor and the Debtor shall promptly pay the same, but each such payment shall be subject to review and approval by this Court as to the reasonableness thereof in the manner prescribed by Subsection (c) of this section.

**10.07    Notice of Hearing and Motions Post-Confirmation.**    Upon confirmation of the Plan, all of the motions, and applications for compensation to professionals, and notices of such hearings shall

be limited to the Debtor, Bankruptcy Administrator and any party of interest directly affected by such motion or application.

**10.08  Satisfaction of Claims.**  The rights afforded in this Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Allowed Claims, liens and encumbrances of any nature whatsoever, including any interest accrued thereon from and after the Filing Date, against the Debtor or any of its assets; and, except as otherwise provided herein, on Confirmation, all such Allowed Claims against the Debtor or its assets, any other or further Allowed Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to Confirmation are satisfied, discharged and released.

**ARTICLE XI**
**CLOSING OF CASE**

**11.01  Procedure for Closing Case**.  If the Court concludes that a hearing on such motion would be appropriate, such hearing shall be conducted upon notice only to the Debtor, the Bankruptcy Estate Administrator, and persons specially requesting notices at the hearing on confirmation.

Respectfully Submitted on this 21st day of March, 2014.

ADEPT TECHNOLOGIES, LLC

By: */s/ Brad Fielder*
     BRAD FIELDER

Its: Managing Member


*/s/ Kevin D. Heard*
KEVIN D. HEARD
Attorney for Debtor

Of counsel:
Heard Ary, LLC
303 Williams Avenue SW
Park Plaza, Suite 921
Huntsville, Alabama 35801
Tele: (256) 535-0817
Fax: (256) 535-0818
kheard@heardlaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing has been served upon Richard Blythe, the Bankruptcy Administrator, P.O. Box 3045, Decatur, AL 35602, and all creditors on the matrix as well as the twenty (20) largest creditors in this bankruptcy case as well as all those shown on PACER by electronic notice and/or United States Mail on the 21st day of March, 2014.

                                                                   */s/ Kevin D. Heard*
                                                                   Kevin D. Heard

Adept Technologies, LLC
Case No. 12-83490-JAC11
Page 20

# EXHIBIT A – RESTRUCTURED PAYMENTS TO PNC

| Loan # | Unpaid Principal Balance at 2/28/14 | Unpaid Accrued Interest to 2/28/14 | Unpaid Late Fees (Pre-Petition) | Total Unpaid Amounts Due at 2/28/14 | Unpaid Principal Balance at 2/28/14 | Interest Rate | Amort (Yrs) | Monthly Pmt (1) |
|---|---|---|---|---|---|---|---|---|
| 60545130 | $ 2,737,875.52 | $ 418,368.05 | $ 1,371.61 | $ 3,157,615.18 | $ 2,737,875.52 | 9.25% | 25 | $23,446.67 |
| 60545131 | $ 666,286.92 | $ 167,158.21 | $ 5,090.84 | $ 838,535.97 | $ 666,286.92 | 9.25% | 25 | $5,705.96 |
| 60545132 | $ - | $ - | $ - | $ - | $ - | 9.25% | N/A | $0.00 |
| 60546880 | $ 857,993.21 | $ 1,984.11 | $ 956.67 | $ 860,933.99 | $ 857,993.21 | 9.25% | 10 | $10,985.12 |
| 60546881 | $ 213,273.93 | $ 44,706.99 | $ 1,249.32 | $ 259,230.24 | $ 213,273.93 | 9.25% | 25 | $1,826.44 |
| Subtotal Loan | $ 4,475,429.58 | $ 632,217.37 | $ 8,668.44 | $ 5,116,315.39 | $ 4,475,429.58 | | | $41,964.19 |
| | | | | | 632,217.37 | Interest | 10.00 | $5,268.64 |
| | | | | | | | | $47,232.83 |

| Lease | Unpaid Remaining Amounts Due at 2/28/14 | | Unpaid Late Fees (Pre-Petition) | Total Unpaid Remaining Amounts Due at 2/28/14 plus Late Fees | Unpaid Remaining Amounts Due at 2/28/14 | Interest Rate | Amort (Yrs) | Monthly Pmt |
|---|---|---|---|---|---|---|---|---|
| 75800 | 243,992.21 | | 12,408.11 | 256,400.32 | 243,992.21 | 9.25% | 4 | $6,100.76 |
| 75800 | 85,360.42 | | 4,644.93 | 90,005.35 | 85,360.42 | 9.25% | 4 | $2,134.35 |
| 75800 | 103,883.11 | | 4,968.68 | 108,851.79 | 103,883.11 | 9.25% | 4 | $2,597.49 |
| 75800 | 106,525.80 | | 4,760.28 | 111,286.08 | 106,525.80 | 9.25% | 4 | $2,663.56 |
| Subtotal Lease | 539,761.54 | | 26,782.00 | 566,543.54 | 539,761.54 | | | $13,496.15 |
| Total Loan & Lease | | | | 5,682,858.93 | | | | $60,728.98 |